Good morning, everyone. We have two argued cases this morning and two submitted cases. And our first argued case is number 2012-1018, BRILLIANT INSTRUMENTS v. GUIDETECH. Mr. Gluck or Gluck? Good morning. May I please report? I'm Jeffrey Gluck, representing the appellant, GUIDETECH, LLC. In our case today, there's been summary judgment against GUIDETECH, LLC on three patents at issue, which we'll refer to as the 231 patent, the 671 patent, and the 649 patent. The material issues of fact in conjunction with the 231 patent, which should have precluded summary judgment, relate to whether or not BRILLIANT's products meet the claim element of plurality of measurement circuits defined within a signal channel in parallel with each other. The material issues of fact that should have precluded summary judgment in conjunction with the 671 and 649 patents, which involve similar issues of fact, relate to whether or not BRILLIANT's products include a shunt and a capacitor operatively disposed in parallel with respect to a first current circuit, having a constant current source or sink. Relating to the first set of issues, those dealing with the 231 patent, again, that relates to, in the BRILLIANT products, is there a plurality of measurement circuits defined within a signal channel in parallel with each other? If I understand what's going on here, BRILLIANT is arguing that that limitation is not satisfied, because in the specification there was a disclaimer of the prior art which involved borrowing. And you say to that, well, the cross-channel embodiment in the specification necessarily involves borrowing. And they respond to that in turn by saying, well, it's not really borrowing, because it's not a channel that exists elsewhere that can be used for another purpose. In order to have borrowing, you can't have a channel which has only a single function, which is what's involved in the cross-channel embodiment. Is that a fair description of what's going on? Well, I would say that that's one of the arguments that BRILLIANT has been trying to make. I don't believe that that has been established. No, no, I understand. All I'm trying to do is to frame the argument as to what your argument is and what their argument is. And if my description is accurate, there is also, if I understand correctly, no expert testimony one way or the other on this particular subject, right? That is my impression as well, yes, that the experts did not, no experts really agree, certainly didn't agree on this issue, if they even touched it. Now, just to be clear, the district court did not find disclaimer was present in the specification, correct? Correct. And that argument was made below as well? Well, I'm not trial counsel, but as far as I could see in the briefs and the arguments, I did not see it. Then why didn't you argue that it was waived on appeal to us? If they didn't raise an argument below, why are you letting them make it here on appeal? Again, just to let the court know the situation of this appeal, I did not prepare the brief on appeal. I was asked to do oral arguments by the client. So, I'm sorry, I don't have an answer for that question. Well, if you don't argue waiver, that's a waiver of the waiver argument. But, I mean, it's sort of frustrating because this argument I was articulating is difficult to resolve without expert testimony, isn't it? Yes, absolutely. So, maybe what we should be doing is sending this back for what is really a further claim construction. A further claim construction or certainly a further hashing out of what the facts actually are in the case. You're not appealing claim construction, are you? No. That's the problem. Right. I mean, that's... Well, I feel that you're not really defending yourself here, and you need to. So, you're just agreeing with everything Judge Dyke said. These are not friendly questions. So, at which point are you going to explain why you believe that the one-edge, two-channel mode effectively infringes these patent claims? Okay. Well, first of all, remember that the element in point is a plurality of measurement circuits defined within a signal channel in parallel with each other. The Brilliant Instruments products are configurable machines. They're configurable. They have two measurement circuits in them. They also have two inputs. Now, on our side, we believe that it's dispositive, the fact that they call it single-channel two-edge, 1C2E. That means that they themselves are defining a channel as containing both measurement circuits in parallel in their own product. Well, but is it relevant how they define a channel? I mean, didn't the district court define the channel here? What was the district court's construction of channel? The district court said that a signal channel is an electrical circuit that includes a signal path for transmitting electrical signals. Very broad. And when it's in the one-edge, two-channel mode, don't both of the channels that operate as timing measurement circuits exist in that path for transmitting the electrical signal? Well, not in that mode. In that mode, there's a single signal path which happens to have two branches. Imagine my hand is one of the inputs. You have a measurement circuit here, a measurement circuit here. There can be a second input going to one of the measurement circuits, but that's not the case we're discussing here. In this case, the machine has been configured, the product has been configured, so that one input, one signal path contains both measurement circuits. So your answer to my question should have been yes. Are both of the measurement timing circuits contained within the electrical signal path? Yes. So in one-edge, two-channel mode, both of the timing circuits in the accused device are in the same electrical signal path. Yes. And that's why you believe that in that mode, this is an infringing device. Yes. What about the other one? It strikes me that you've got a problem with literal infringement with respect to the other two patents, but you also argue doctrine of equivalence. Yes. Well, I think that even the question of literal infringement is still not a settled issue there. Doctrine of equivalence, I agree, is certainly an open issue here. Are you saying that there is no literal infringement? No, I'm not saying that. We are not saying that. We believe there is literal infringement, and as a backup argument, we have doctrine of equivalence. Well, how can you say there's literal infringement if the claim requires the shunt and the capacitor operatively disposed in parallel with respect to the first current circuit? They're not operatively disposed in parallel. The capacitor is within the first current circuit. It's part of the first current circuit. You can't be disposed in parallel with something if you're part of it. Well, that's actually I think the word operative is very important here because it doesn't say physically disposed in parallel. It says operatively disposed in parallel. And what happened? First of all, there are a number of issues here. One is what constitutes the first? Let's assume for a moment that we accept your expert's testimony that the capacitor is within the first circuit. I know you dispute that, but let's assume that that's how we read the testimony. So if that's true, then why is there a genuine issue with respect to literal infringement? Because there are actually two modes of operation. And in one of the modes of operation in which what our experts circled happened to include the capacitors. There are still two different current paths, two alternative current paths defined with respect to the current. In one mode. And this also relates to the fact that the expert could have answered the question when he was asked to circle the first current circuit. There are at least three ways he could have answered that question and three things he could have circled. But given that particular encirclement, that refers to one mode in which the shunt circuit is closed. So we have all of the current going through the shunt as an alternative. Now in that particular case, the capacitors are serving a dual role in terms of providing feedback. But also the current is being shunted out of them, being drained from them in that mode. In the other mode of operation, when the shunt is open, there is no current going through the shunt. And the current only goes into the capacitor, it only goes into the right side of that. Sounds like you're describing a doctrine of equivalence case though, not a literal infringement case. Because you're talking about how it operates functionally in terms of the way and the result. Well, what we're also doing is we agree that certainly we have doctrine of equivalence even if we don't have literal infringement. I want to repeat that. But we also believe that there are two modes, two alternative modes of operation that literally define two. Again, we agree with the doctrine of equivalence, but we also think that there is a way to interpret this where you can actually have two modes, two different alternative circuit paths defined in two different modes of operation. Let me ask about the doctrine of equivalence issue for a moment. As I understand it, what you're relying on is your expert, I think his name is West, and page 1027 of the appendix is the only place I see that he's addressing the doctrine of equivalence. And what he describes the function as allowing the shunt to control the path of a current flowing to or from the first current circuit. Well, is that really the correct function? Isn't the correct function having two parallel paths that are outside of the first circuit? And if you define that as being the function, then his testimony isn't addressed whether it satisfies the function way result test. Well, I think that first of all, we had, well, just to go try and go straight to the point, there are many terms that could be construed further in this claim, in these claim elements. One is, for example, what does it mean to... But the question I'm asking is, didn't West use the wrong function in addressing the function way result test? That's entirely possible, yes. But I... Okay, would you ask the question again, please? I'm sorry. I hope you're going to give the same answer you gave before. He has described a function which isn't the function of the device, which is to create two parallel paths outside of the first circuit. He's redefining the function from what the claim function described is, no? Why don't you look at the claim language? Well, let him answer the question first. The... Okay. Okay, the first... That the... Our expert could have... was asked a very broad question and could have answered it as I thought in at least three ways. With, of course, permission, I'll... Don't worry about that. Okay. The function of the... I think I would prefer to have a look and come back to that if I may. I'll be happy to submit an answer in writing, if the court will allow that, with permission of the court, or to come back to it during rebuttal. Okay. Because I'd like to take a look at that myself. All right. Thank you. Good morning. Good morning. I'm Tom Latrum, Silicon Edge Law Group, representing Brilliant. Regarding the 231 patent, Brilliant's products are conventional in the sense that they have two measurement circuits, two signal channels, one measurement circuit per signal channel. And I want to respond to Judge Moore's comment about disclaimer in the record, but let me skip over that just for now. Brilliant's product, the design and configuration of Brilliant's products is conventional. That one measurement circuit per channel is the way TIAs have been designed and built for decades. And they perform the one-channel, two-edge function because you need two measurements most of the time. Well, you're using one channel... You're using these in a somewhat colloquial sense, but we've got a district court claim construction, and the claim construction is a channel is an electrical circuit that includes the path for transmitting electrical signals. So if we're simply talking about an electrical circle and the path for the electrical signal, when you're operating in your one-channel, two-edge mode, your channel is the path the signal is traveling through, and it's traveling through two measurement circuits. So I don't see how it doesn't fall squarely within the claims in that regard. I mean, you may not like the claim construction, but you've got to live with it. So how does that claim construction seem to read right on you? We conceded that claim construction for signal channel because, frankly, that claim construction gives signal channel flexibility. That's true. It gives you kind of a range of things a signal channel could be. But what was important in our view, is important in our view in these claims, is the defined within language. What the patent discloses is a time interval analyzer that has multiple two or more measurement circuits per channel. If you look at figure one, figure one shows the preferred embodiment. It's got two channels, item 12 and item 14. Each channel has two measurement circuits. Your product absolutely does not work like the preferred embodiment. I totally get that. It completely doesn't. And it harkens more towards the prior art than the preferred embodiment for sure. But I can't measure you against the preferred embodiment. I've got to measure you against the claim language. That's true. That's true. But you have to look at, we would submit, Your Honor, you have to look at the specification in order to figure out what the claim means when it's talking about a plurality of measurement circuits defined within a channel. Clearly, in the prior art, there's one measurement circuit per channel. Okay, I'm just setting the stage. But the word channel is the path the electrical signal travels through. So once you accept that the word channel isn't a predefined circuit and its component, but rather a signal path, then you've got two measurement circuits in that signal path. What we're arguing is, yes, the channel is a signal path. And yes, the components in every time interval analyzer can be linked in different ways. There are multiplexers that can switch the signal through different components. But we're suggesting that once you identify a path, that path defines, it sets a signal, a signal channel. And you can't vary that signal channel on the fly by operation of the device. Sure you can. That's what switches operate for. You can physically. But think about this. What the inventor did was he solved a problem, a couple of problems, by adding a measurement circuit to a channel. That's what the patent describes. In order to express that notion, that you're adding a measurement circuit to a channel that traditionally has just one measurement circuit, you have to find a way to sort of set a context for that. You have to link a measurement circuit to a channel, to a particular channel. And Judge Wilkin got that, and she says that a measurement circuit has to be contained within a particular channel, a single channel, a given channel. So yes, there are lots of paths, but once you have a path, you have a channel, then you've got a measurement circuit that's fixed to that channel. That's what the patent describes. And that's how the inventor and his attorney expressed the concept of multiple measurement circuits per channel. Aren't you arguing that a channel is defined by the physical layout as opposed to the flow of the signal? It does appear, Judge Moore is right, the definition of signal channel is a path. So you'd have to include the path of the current through the channel. What I'm suggesting is you don't vary that channel once you decide what it is. You don't on the fly redefine the channel, just as you don't on the fly redefine in which channel a measurement circuit is defined. The notion of defined within has to have some sort of permanence in order to be able to express this concept of multiple measurement circuits per channel. Here's a way to think about it. In the one-channel two-edge mode, and Judge Wilkin got this very clearly, in the one-channel two-edge mode, you could have channel A using both measurement circuits, you could have channel B using both measurement circuits. In effect, the argument that either channel A or channel B could be a signal channel with a plurality of measurement circuits defined within it is an argument that the measurement circuits themselves kind of float free. They're just sort of sitting out there. It's a dynamic concept. Defined within is a dynamic concept in which you define a measurement circuit in a signal channel just by its use, and then it's floating free again, waiting for some other channel to use it, and it can be defined within channel A or channel B or whatever channel is using it. There is nothing, nothing in the patent that describes that. And you look through all of the papers... What about just cross-channel embodiment? Excellent point. Excellent point, Your Honor. Early in the case, GuideTech argued the patent talks about cross-channel switching, in effect, borrowing a measurement circuit, a channel borrowing a measurement circuit, in order to use two measurement circuits. We pointed out that you can't have cross-channel switching, which the patent talks about. You can't have borrowing unless a measurement circuit is first a part of only one channel. In order to borrow it, it has to belong to that other channel first. In other words, you can use it for another purpose. Yeah, you can use it for another purpose, exactly. That doesn't mean it's now defined within the other channel that's using it. Just to be clear, you didn't argue anywhere in your red brief, did you, to us on appeal, that there is a legal disclaimer in the specification. I didn't see those words anywhere in your red brief. Am I mistaken? Not with regard to the 231 patent. You're not mistaken, but I need to clarify, if you don't mind. We did argue that in the file history, there is prior art. There was a drawing submitted by the inventor to the examiner during prosecution with an IDS, accompanied by a letter that said, this device has been on the market, has been on sale more than a year prior to the filing of the patent application. That device is the same configuration as Brilliant's product. It's the DTS 2070, 2075. That's the validity argument, right? It's also, we said, we cited some cases in the red brief for the proposition that... To claim interpretation. Yes, exactly.  It's not to claim. As Westinghouse said, auto gyro. It provides clues as to what was not covered. It's just hard to imagine the examiner issued this defined within claim over prior art that practiced the one channel two edge function, and it does. But you haven't even had a chance to explore your validity options. Correct. Even when claims are construed broadly, it could very well be to the patentee's detriment. That's correct, that's correct. We have not had a chance to do that because there's no infringement. Can I ask you to move on to the 671 patent and the shunt in parallel with the capacitor? Yes. Do I understand your argument right? How can you be in parallel with the circuit, if you're part of the circuit, vis-a-vis the capacitor? Yes, actually the focus for us is with respect to the first current circuit. So there's opportunities both in parallel. It has to be separate, exactly. And the irony here is GuideTech argued that, both of its experts argued that, and then West testified that the capacitor is part of the first current circuit, and now they can't figure out how to get out of that. But the truth is, our argument is, if the capacitor is part of the first current circuit, there's no way it can be operatively disposed in parallel with respect to the first current circuit. That's what Judge Wilkin held. She held that finding by West, that the capacitor is part of the first current circuit, precludes both literal infringement and infringement under the doctrine of equivalence, because with respect to the first current circuit, it would be gone. With respect to the what? The first current circuit? Yes. Why does she hold that doctrine of equivalence doesn't apply? Because if you find that... I'll tell you, I don't see any analysis of doctrine of equivalence in her opinion. The entire analysis, it seems to me, pertains to literal infringement, and then the ultimate sentence of the opinion says, therefore no infringement literally or under the doctrine of equivalence, without any separate analysis of their evidence presented on the doctrine of equivalence. What she did, Your Honor, is she said, and you'll notice earlier in the opinion, she says, she cites Searfoss for the proposition that the doctrine of equivalence doesn't apply if a limitation would be entirely vitiated by the argument. And she applied that case and that doctrine to both arguments, both patent arguments. Where does she say that with regard to the 671 patent? Where does she say that there would be vitiation here or anything along those lines that would explain to me why she concluded a summary judgment? She didn't expressly say that in that analysis. She did in the 231, right? She did in the 231, yes. In the 231, she says vitiation, and she explained how it would apply and why that should preclude the doctrine of equivalence. But she didn't do that at all with regard to a whole separate patent. It's a completely different issue. We would submit, Your Honor, that what she did was she cited the law she thought applied to the case. But not in the section on this patent, correct? She didn't expressly apply that case, but I'm suggesting that's what she meant when she cited that case and expressed that law and then applied it the same way in both patents. Well, it doesn't necessarily make a lot of difference what she said in the de novo review on summary judgment. If she failed to articulate one of the grounds, that deprives us of the benefit of her views, but it doesn't prevent us from deciding the issue. I agree with you, Your Honor. Thank you. Well, they have an expert that did provide an expert report and explained the function, way, and result of this particular claim element, which was the shunt and the capacitor being disposed in parallel to each other. And she doesn't make any mention of that, which I find troubling. And it does seem to be more detailed than the conclusory sort of thing that in the past we've held isn't enough. So how do we approach that? What she did was she referred to... Guytech had two experts, Sassan Tabatabai and Dr. West. Well, let's not talk about what she did. Let's talk about what should happen in the light of the testimony. Okay. I think I can do it by addressing both points. Dr. Tabatabai provided a graphic that shows his understanding of how the operatively disposed in parallel with respect to the first current circuit language worked. That's in our brief. I think it's page 51. That circuit shows the first current circuit, a path splitting, one going to the shunt, one going to the capacitor, and an argument. Wait. Do you have any testimony, expert or otherwise, on the function, way, and result with regard to this claim element that was submitted during summary judgment? Function, way, result? No. Nothing. Well, I'm going to come back to that. I may. No, it's a yes or no. I believe Dr. Kuliski did. I believe our doctor did. Tell me where in the appendix where he testified about the function, way, and result. It probably is not in the appendix. It probably is in the record if I can find it. Give me just a moment. I don't want to eat up all your time. Maybe your colleague could find it and you could hand it up to him. I don't know if that's something you could do. Thank you. Because I didn't see any separate testimony. The only record testimony I saw, you agree function, way, and result are questions of fact, correct? Whether or not something under the doctrine of equivalence has the same function, the same way, and the same result are questions of fact. Our case law says so, so I'm not trying to trick you. I agree with that, but the reason I'm hesitating is I believe the doctrine that Judge Wilkin relied on in which a function, way, result analysis would entirely vitiate claim limitation is an issue of law. I understand your argument. It's hard for me to understand how it would be vitiated. Why don't you tell me how it would be vitiated because the claim language is operatively disposed in parallel with respect to the first current circuit. And the reason, quite clearly, that it's operatively disposed in parallel seems to me to be the exact function that's articulated in the expert report, the very function that he articulates. The function is to allow the shunt to control the current flow, right? The shunt's a switch. Flip a switch, it goes one way. Leave the switch open, it goes the other way. I believe Judge Dyke hit the nail on the head, though. That's the function for operatively disposed in parallel, but not with respect to the first current circuit. It has to be outside the first current circuit. It has to be a path. And the reason I mentioned Sasan Tabatabai is he said there has to be a path from the first current circuit to the capacitor, can't do that if the capacitor's part of the first current circuit, and Judge Wilkin cited that testimony as support for her ruling. And then she said right after that, you can't have a capacitor operatively disposed in parallel with respect to a first current circuit if it's inside, and that prevents, if it's inside, that prevents, precludes, both literal and equivalent infringement. Just to be clear, the reason that the shunt exists, the function of having the shunt and capacitor in parallel to each other with regard to that signal that's coming out of that first current circuit is so the shunt can operate as a switch, charge up the capacitor, or let the current flow there alternatively, correct? Yes, although Brilliant's product works differently, but that's basically it. But that's the function of the product, isn't it? Isn't that the function of that limitation, to allow the current to choose? Okay, here's an easier one. Do you have any evidence that that's not the function? Because I don't see it in the record, and this is summary judgment. Okay, the answer is you're right about the function on operatively disposed in parallel, but what you're doing, I believe, is reacting to the arguments they made in their reply brief about that part of the limitation. They completely ignore the, with respect to the first current circuit. In other words, to define the function, you have to consider that the fact that the claim says that the parallel paths have to be outside of the first circuit. Exactly. And that's the whole limitation that has to be met. I still have one question that I haven't gotten an answer from you from. Is there any evidence to the contrary, because this is summary judgment, it is a question of fact on DOE. They put forth evidence about what the function, way, and result is here, and I don't see any evidence from your side to the contrary. And given that it's summary judgment, we have to give them the benefit of all the factual inferences. I would beg to differ slightly, Your Honor, in that I don't believe they put forth any evidence on the with respect to the first current circuit portion. Their brief is addressed entirely to the first part, operatively disposed in parallel, and that part of it, you're right, but the with respect to the first current circuit, you have to meet the whole limitation. They don't address that. There's no expert testimony on that. The only expert testimony is to the contrary. Let me read to you some of their expert testimony. This is their expert report. The electrical disposition of the shunt capacitor with respect to the first current circuit of the BI-200 and BI-220 is equivalent. And then he goes through the function, way, and result. I'm sorry. I don't have that language in front of me, but I think if you look at the function, you will see that he's talking about, as Judge Dykes says, a capacitor outside a first current circuit with a path between them, a path of current between them. True, the shunt can control whether that path is followed or the alternate path is followed, but the path has to exist from the first current circuit to the capacitor, and that's the point Judge Wilkin was making. If the capacitor is part of the first current circuit, that part of the limitation is gone, and it doesn't matter whether it's literal or doctrinal equivalence, it's not there. And she cited the vitiation case for that principle for equivalence. I believe that's what she was doing. But she didn't do that with respect to the 671 patent. There's hardly any discussion at all as to the doctrinal equivalence. She said, well, 671 and 649 have the same limitation, that operatively disposed in parallel, so the argument's applied to both. She said the finding that the capacitor is part of the first current circuit precludes both literal and equivalence infringement. She didn't elaborate. I believe what she was relying on was her previous citation of law on doctrinal equivalence and the vitiation of a limitation. Clearly, that with respect to the first current circuit, limitation is gone under either literal or doctrinal equivalence if there's infringement, and I believe that's what she was saying. She said something similar on the 231 patent. She was a little more clear. She said it would vitiate entirely the defined within limitation. Okay. Thank you, Mr. Walker. Mr. O'Neill, you have ten minutes. Well, why don't I start with picking up with the question you posed, Judge Dyke, regarding the doctrine of equivalence. I think that in order to understand the doctrine of equivalence argument, you have to go back to the claim construction here. The claim construction of operatively disposed in parallel was arranged in a manner capable of forming alternative paths of current such that current can flow across one or the other path. It does not say one or the other path does not necessarily say they must be mutually exclusive. And operatively disposed in parallel as a result of this construction does not require that the components be physically parallel or even always parallel as long as this construction is met. So even in what I'll consider the worst case scenario where you circle that entire right side of the brilliant instrument schematic, there are still the shunt, the opening or closing of the shunt is still performing the function of whether the current is going in one direction. Yeah, but it's not performing the function of being outside of the first circuit, which is the claim construction here. If we assume that that claim construction is right, then the function that he's addressed doesn't encompass the entire function described in the claim. Your expert just doesn't agree with Joe Sike on his definition. Right, I'm sorry, I can't. And by the way, on top of that, experts, I'd like to note that Dr. Thomas Tobias' testimony with regard to the validity question, the schematic he was looking at was not brilliant instrument schematic, it was a schematic from the patents. And so what he defines with respect to the schematic from Guytech's patents is entirely irrelevant to whether or not brilliance is infringing or not. But, you know, again... I think you're over your time here. Okay, I'm sorry. Thank you very much. Thank you very much. Thank both counsel. The case is submitted.